Good morning, your honors. May it please the court, I am Carol Melnick for the Clarkstown Central School District. I'm here in support of the district's position that the district court was wrong in finding that the district failed to provide a free appropriate public education for the student and that it impermissibly applied standards and ignored the judgment of the impartial hearing officer and SRO who are mandated to hold hearings and assess these types of cases. Can we jump right to the end of the argument in the question of whether or not the Hawk Meadows School was an appropriate alternative? Certainly. Because that that seems to me a fairly stark difference between the district judge and the agency. Right, well let me start with the fact that this student requires specialized instruction in order to gain educational progress, in order to meet his goals that are unique for him. Because of that, he requires a special education program at that time. Hawk Meadow is not a special education school. That is correct. However, Hawk Meadow did not address this youngster's deficiencies. They are primarily, at that time, they were a lower elementary and only five kids in its upper elementary program. The student was the only child in fifth grade. The teachers were not qualified in special education. They were not necessarily even New York State certified teachers. The teacher who was responsible for teaching him reading, writing, and penmanship was a was a guidance counselor with an expired license. The teacher who was the head teacher of the group had a New York State certification in math and science, had nothing to do with English. The district court focused in part on the fact that Hawk Meadows was using the multi-sensory approach. The small class size use of the multi-sensory approach, I realize that the IHO in this case did a twelve page analysis suggesting that might not have been sufficient, but could you address those two factors specifically? Yes. Special classes utilize multi-sensory approaches, as do general education classrooms in regular public school districts. To say that you utilize a multi-sensory approach still does not get at whether or not you are addressing the specific needs of the child. The most relevant, I think, evidence in all of this is that after only one year at Hawk Meadows, his reading comprehension declined from the 67th percentile all the way down to the 37th percentile. His math scores declined to the deficient range. He went from being a student who had finally made gains in the district, had achieved average ability in reading comprehension in math, and now lost all of those gains in only one year at Hawk Meadows, down to the first percentile for the most specific disability. Hawk Meadows has no scientific-based program for math. There was no special arrangement made at all for math? None whatsoever. Local school districts, the local school district... How does a multi-sensory approach apply in a math context? There are scientific-based programs such as the one that the school district used, which is Touch Math. This student was a youngster who did not want to utilize the special programs that were available to him in the general ed setting. That is why the district offered him an education in the 15 to 1 class size, because in that class he was willing to use his scientific-based methods of a Wilson reading board, of the Touch Math. That's how this child made progress. He made no progress, no quantifiable objective progress at Hawk Meadows. May I ask a completely different question? I may be completely wrong, but the district court sent this back to decide the question of whether on the balancing the equities and so on, there should be a payment for this. Why doesn't that, even though there was a final order in a way, why doesn't that make this an interlocutory appeal? I mean, I know we have some cases like Somoza, but that was in a very strange situation of an injunction, and I just I'm worried about whether this is a case on which we have jurisdiction. Your Honor, I can't answer that. I can tell you that when the case was remanded back, what that hearing officer focused on was the fact that throughout this process, once the parent decided to place her child at Hawk Meadows, she did not agree . . . No, no, I understand all the arguments on the merits. I understand what you're saying. I understand that we can take into account the fact that she did less well at Hawk Meadows because the retrospective does not apply to that. I understand all that. I just wonder whether the case is properly before us, given that the district court sent it back for a determination of an issue which may moot the whole thing, because if the district court finds that on the equities, there shouldn't be payment, then the case isn't before us. Our understanding is that there was a final order of the appeal, and that's why we are here before you. The hearing officer, NSRO, has looked at the issue of remand, and they have made their decisions with respect to that remand. The hearing officer, once again, after holding an 18-day hearing and writing a 191-page decision, determined that the equities do not support payment for the parent. Parents may choose to place their child in private school, and many do, but reimbursement is only warranted if the district hasn't provided FAPE, which it did, if the parent's program is appropriate, which it is clearly not, and if equities support that payment, which they do not. I'm sorry, was there another question? No. Okay. My only real question is whether this was a final judgment. The case was closed. The district court didn't keep it. The district court closed it out. Correct. What I would encourage is that if you look back at that initial hearing officer decision, that decision carries with it all of the evidence that I'm speaking of. It was all looked at very carefully, very succinctly, and it was a very well-reasoned decision. The district court's decision completely substituted the judgment of the hearing officer and the SRO for his own, came up with his own methodology. Not only that, what he based it on was a record that was not before the CSE when it met for the 2012-13 school year or the 13-14 school year. The parent had had the child privately evaluated and did not share that report with the district until more than a year later. That goes to the equities, correct? It also goes to the district court's decision of what program the district should have provided. It went to the issue of FAPE. It should not have, I did go to the judge finding that what the district did was not appropriate because look what this other decision said. The district did not have a copy of that decision for either of the IEPs in question here. Thank you. May it please the court, my name is Ty Park of Park Jensen Bennett on behalf of the appellee, Ms. Alvarez, the parent. Let me go right to Judge Walker, your question about Hawk Meadow. The whole problem with this record is that IHO made incredibly selective use of the evidence that came before her. I want you to get to the fact of any special attention that Hawk Meadow paid to his disabilities in terms of what would be required under an IEP. Let's focus on the first year because the second year is more of a question. Sure, so let me do that. There's no dispute in the record that Dr. Braniaki, who was a neuropsychologist, provided the most comprehensive evaluation of the child in May of 2012. She was a neuropsychologist who produced ten single-space pages with instructional recommendations and an evaluation of what's wrong with this child, why he cannot learn without special services. She identified ADHD, she identified a learning disability, and she specifically said- How does that go to whether Hawk Meadow is qualified? Now the IHO made a mistake and went on the grounds of its not having the appropriate documentation. The SRO rejected that and said there is nothing here to show that this school is particularly qualified. The evidence is that the child regressed there. Isn't this not really an issue about any of that? It isn't about multisensory because that never came up until the district court really focused on it. It's about the fact that this kid was bullied in the public school and this was not known to them and finds himself happy at Hawk Meadow, which is a good reason for the parents to go there, but is not what this statute is about. So Judge Calabresi, when he entered Hawk Meadow, the evidence showed that even though he was a fifth grader, he was performing reading at a second or third grade level. And after some time at Hawk Meadow, he regressed fervor? No. Again, this is why the record that the IHO and the SRO created is so seductively deceptive. And Judge Roman, who went through the actual testimony of the witnesses from Hawk Meadow, showed that that's a totally distorted picture of what was going on in Hawk Meadow. Judge, let me put it this way. You have a parent who's got a child in a public school district who is coming home miserable, talking about killing himself. He is in a self-contained classroom. Judge, if I could just finish this point. He goes to Hawk Meadow. His emotional well-being, without any dispute, increases. There's no question about that. Look, I started by saying there is no question that it looks as though this kid was very unhappy in the public school. And now we know why, because he was bullied, but that was not there before. And he goes to Hawk Meadow, and he finds himself very happy, and that any parent would want to do that. I have no doubt about that. That's not it, Judge. That's not what we're relying on. What we're relying on, among other things, is that his word fluency increased from his 32nd percentile to the 50th while he was at Hawk Meadow. In other words, there's two... It's going the other way in math and also in comprehension. And what Judge Roman specifically focused in on was that Hawk Meadow provides the multi-sensory one-on-one instructional that everybody, including the district's witness, Ms. Mahoney, the special ed teacher, said he requires multi-sensory in order to learn. Why is that? And Ms. Mahoney said that they gave him that in the public school. Isn't that the other part of what Mahoney... Well, she did say that, but what the IHO completely ignored is the testimony that you cannot provide this kind of an intensive education in a 15-to-1 classroom. It's too large. And, Judge, Ms. Grant, whom the SRO and the IHO very heavily relied on in their opinion, Ms. Grant did a classroom observation in this 15-to-1 classroom. She found the child easily distracted, not taking oral instructions, responding very positively, however, to visual presentations. So their own witness, if you look at this evidence fairly, as Judge Roman did, and not as the IHO did, if you look at the evidence fairly, what it shows is that 15-to-1 was too big for this kid. He couldn't learn. Yes, he progressed, but it wasn't tailored in the way that the IDEA requires as a matter of law. Hock Meadow, on the other hand, did exactly that. It was a multi-sensory program to the core. But it wasn't tailored to him, was it? Well... It was available to every student there. Well, that's true, Judge, but it just turned out that that's exactly what he needed. That's what Dr. Braniacki said he needed, was a multi-sensory approach with one-on-one instructional. And that's what the district's own general teacher, Ms. Graff, testified, that he needs one-on-one multi-sensory. And that is what the evidence of Hock Meadow witnesses abundantly laid out, none of which the IHO absorbed, took into account, and discounted for reasoned bases. It was a result-oriented decision. And I do agree with Ms. Melnick on one thing. Please do read the IHO's opinion. It's very long with respect to just reciting the testimony that came before her. But when she actually analyzes whether the 15-to-1 was adequate, there is no mention of multi-sensory, or there's certainly no effort to analyze what that means for her. There's no effort to talk about what Ms. Graff's testimony, what its implications are to her. And also, Judge, here's a final thing. Judge Roman focused very much on the fact that this was not the least restrictive environment, as the IDEA requires. It's too large. It's a self-contained special ed classroom. The law requires that the district provide a continuum of alternative placements so that the child's special needs are addressed in the context of a mainstreamed environment. And what was required, that was legally required. And the judge said, that's not even addressed by the IHO, nor is it addressed by the SRO. So I agree with you. Please take a look at what the IHO does. Just a moment, my question about jurisdiction. Your Honor, I have to say, I had not thought about that. It has not been challenged by the district on this issue. Jurisdiction is one of the things we have to deal with, whether it's challenged or not. I agree, I agree. And I don't know the answer to that. The judge, Judge Roman, did close out this matter? Yeah, I mean, there is a- And it seems to be final? There certainly is a final order. But it's a final order that sends it down for something which may moot the whole thing. And let me just depart slightly from the record to just explain to the court, to address your question, where we are right now with that issue. It was remanded to the same IHO. She found that the equities did not favor the parent. So this all ends up being a period victory anyways. And now that matter is before Judge Roman again, and he's handling that. So the peculiar thing is that if Judge Roman affirms that, then the case goes away. In our opinion, whatever we say would be purely advisory. On the other hand, if Judge Roman reverses it, and we have sent it back because it isn't a final order, the whole thing comes back to a whole new panel, and they have to start again. Well, it's actually more complicated than that because the SRO actually reversed the IHO as to one of the years, saying that equity is actually required to issue, but as to the other, so there's like cross complaints and cross- It might be helpful if the two of you, since it wasn't addressed in the briefing, were to provide us letters addressing this issue. Maybe five page letters, no more than five pages, in a week from today. Very good, very good, Your Honor. We'll do that. We do have jurisdiction, and would counsel us to sit back and wait until the district judge decides this case. Can I, there is on the other hand, the one, we have a cross appeal here, which is that the judge did dismiss on time barred and- Earlier years. Section 1983, that's correct. Yes, could you address that issue briefly, because I understand your argument. You're focusing on the May 2012 Dr. Braniaki's evaluation. Why wouldn't it, though, be Dr. Roseman's evaluation, or some earlier point? And I think it's, the only way that I can say this is, Judge, if you look at Dr. Braniaki, it is qualitatively different than Dr. Roseman's evaluation a year before. Dr. Braniaki's is extremely specific. Yeah, but isn't, of course it's very different, but wasn't it enough to give rise to an action for purposes of a statute of limitations? I don't think so, Judge, because part of the analysis also has to be, does the parent have become aware that the kid could do better in a different setting? And that clearly did not happen until she saw Dr. Braniaki's very specific evaluation and recommendations that he applied multi-sensory in a one-on-one setting. That was not present to the parent. And so here, really it's almost a policy question for this court to suggest that the parent, as soon as she becomes aware that maybe there's some problematic classification going on, that she has to get on the stick and sue the school district. I don't think that's the law, Judge, nor do I think that should be the law. And can I just add, end on one note? As to both the statute of limitations and the section 1983 ADA claims, our position is quite simple. The court, the district court, simply construed all of the evidence against the non-movement in a summary judgment. You can't do that. It's entirely flipped. For that reason, we believe we submit, Judge Roman, erred, and those two claims should be sent back on remand. Thank you very much. I sure wish we had more time with you. First, I want to address that not only was there no evidence that this student was bullied in Clarkstown School District, there was evidence from his fourth grade teacher that he was very happy in school, that he got along well with his teachers, with his peers, he had friends, he was social. This was a happy youngster. There was no evidence of what the parent is claiming from the district's perspective. When he was in Clarkstown, he spent two and a quarter hours in his special ELA and math class because that's where he needed to be to learn. The remainder of his day was in the general education program with his peers. At Hawk Meadow, the fiction of Hawk Meadow is that it's not a general education school, more than half of the children in the student's class, in grade five, three of the five were children with disabilities. In grade six, five of the children, five of the nine children were students with disabilities. And yet there was no one who was qualified to teach these children. Not only were they not qualified to teach these children, but the local school who was teaching these children failed, they did not even provide the minimum amount of special education these children should have. It's no wonder that this student declined and lost the gains he had made in the Clarkstown School District. There he had highly qualified, trained special ed teachers, not at Hawk Meadow. Thank you both. Thank you. And we'll take it under submission.